[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
Memorandum Filed June 24, 1997
The plaintiff, Aetna Casualty Surety Co. (Aetna), seeks a declaratory judgment as to whether it has a contractual obligation to indemnify and defend the defendant Gentile in a civil action entitled Prete v. Gentile, Docket No. 336713, brought in the Superior Court for the judicial district of New Haven. The plaintiffs in Prete v. Gentile allege that on September 13, 1990, Gentile negligently struck Donna Prete with a blunt instrument and negligently stabbed her with a knife causing her serious injury. In that action, in which Aetna defended Gentile under a full reservation of its rights, a settlement was eventually reached, with the question of who should pay the amount of the settlement to be determined by this action.[1]
Aetna alleges that it has no duty to defend or indemnify Gentile for the damages sought by the Pretes for the following reasons: 1) Gentile is not an insured under the policy because he was not a resident of his parents' household[2]; 2) the bodily injuries suffered by Donna Prete were not caused by an "occurrence" as defined by the policy; 3) even if Gentile were covered by the policy, the bodily injury suffered by Donna Prete was intended or expected by Gentile and is excluded from coverage under the policy; 4) even if Gentile were covered by the policy, he breached its provisions by failing to give notice of the occurrence as soon as practicable; and 5) even if Gentile were covered by the policy he breached a condition of the policy by failing to forward to Aetna every notice, demand or summons relating to the occurrence. CT Page 6939
Gentile did not answer or appear in the present action and a default was entered against him on May 19, 1993.[3]
The Pretes have filed an answer to the amended complaint. They have also filed five special defenses and a counterclaim, none of which are relevant to Aetna's motion for summary judgment.
Aetna has now moved for summary judgment, contending that as to the amended complaint, there are no factual issues in genuine dispute and that, based on those facts, it is entitled, as a matter of law, to a judgment declaring that it owes no obligation to defend and/or indemnify Gentile. Summary judgment must be granted if the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Conn. Practice Book § 384; Suarez v. Dickmont Plastics Corp. ,229 Conn. 99, 105, 639 A.2d 507 (1994); Telesco v. Telesco,187 Conn. 715, 447 A.2d 752 (1982); Yanow v. Teal Industries. Inc.,178 Conn. 262, 422 A.2d 311 (1979). A "material" fact is one which will make a difference in the outcome of the case. Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578,573 A.2d 699 (1990). In ruling upon a summary judgment motion, the court merely determines whether an issue of fact exists, but does not try the issue if it does exist. Michaud v. Gurney, 168 Conn. 431,362 A.2d 857 (1975).
The purpose of summary judgment is to eliminate the delay and expense accompanying a trial where there is no real issue to be tried. Dowling v. Kielak, 160 Conn. 14, 273 A.2d 716 (1970);Dorazio v. M.B. Foster Electronic Co., 157 Conn. 226, 253 A.2d 22
(1968). "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party." Connecticut Bank Trust Co. v. Carriage LaneAssociates, 219 Conn. 772, 780-81, 595 A.2d 334 (1980).
Once the moving party has submitted evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. Bartha v. Waterbury House Wrecking Co., 190 Conn. 8,11-12; Farrell v. Farrell, 182 Conn. 34, 38 (1980); RuscoIndustries, Inc. v. Hartford Housing Authority, 168 Conn. 1, 5
(1975). It is not enough for the opposing party merely to assert the existence of such a disputed issue. "Mere assertions of CT Page 6940 fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § 380." Bartha v.Waterbury House Wrecking Co., supra, 190 Conn. at 12. "The movant has the burden of showing the nonexistence of such issues but the evidence thus presented, if otherwise sufficient, is not rebutted by the bald statement that an issue of fact does exist." Kasowitzv. Mutual Construction Co., 154 Conn. 607, 613 (1967), quotingBoyce v. Merchants Fire Ins. Co., 204 F. Sup. 311, 314 (D.Conn. 1962); Burns v. Hartford Hospital, 192 Conn. 451, 455 (1984).
The party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denial but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 256,106 S.Ct. 2505, 2514, 91 L.Ed.2d 202, 217 (1986), cited in Salomon v.Krusiewicz, 14 CLT 456 p. 31, 3 CSCR 84a (Super.Ct., New Britain, 10/6/88).
The following facts are uncontested and are taken from the complaint and answer in the present action, Aetna's requests for admission[4] and the sentencing transcript in State v. Gentile, Superior Court, judicial district or New Haven, Docket No. 133064 (January 10, 1992) (Corradino, J.). As explained in footnote one,supra, the allegations in Aetna's complaint as to Gentile are considered uncontested. See Aetna Casualty Surety Co. v. Jones,220 Conn. 285, 295 n. 12, 596 A.2d 414 (1991) ("[t]he entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to a judgment"). During the morning hours of September 13, 1990, Gentile, without the Pretes' permission or authorization, entered the Prete's residence intending to steal an automobile. At the residence he ingested cocaine and alcohol. (Complaint ¶¶ 15, 16, 18; Answer, ¶ 1; Admissions, ¶¶ 1, 2.) When Gentile heard Donna Prete return home he hid in the basement. (Complaint, ¶ 17.) When Donna Prete entered the basement, Gentile, who was wearing a stocking mask to conceal his identity, struck her on the head with a blunt instrument and attempted to put tape over her eyes and a bag over her head. (Complaint, ¶¶ 19-22; Answer, ¶ 1.) Gentile then demanded the keys to her car, and they ascended to the kitchen. (Complaint, ¶¶ 23-24, Answer, ¶ 1.) While in the kitchen, Gentile grabbed a kitchen knife and repeatedly stabbed her more than fifteen times in various places on her body. (Complaint, ¶¶ 25-27; Answer, ¶ 1; Admissions, ¶¶ 3-13.) Donna CT Page 6941 Prete did not know that Gentile was in the residence and she had no conversation with him prior to being struck on the head with the blunt instrument. (Admissions, ¶¶ 14-15.) Gentile located the keys to Donna Prete's car and drove away. (Complaint, 28; Answer ¶ 1.) On September 13, 1990, Gentile was arrested and charged with burglary in the first degree and assault in the first degree. On November 4, 1991, Gentile entered a plea of guilty to both counts under the Alford doctrine.[5]
"An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract and enforced in accordance with the real intent of the parties as expressed in the language employed in the policy. . . . The policy words must be accorded their natural and ordinary meaning. . . . Under well established rules of construction, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy. . . . This rule of construction may be not applied, however, unless the policy terms are indeed ambiguous. . . . Moreover, the mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) Stephan v. PennsylvaniaGeneral Ins. Co., 224 Conn. 758, 763-64, 621 A.2d 258 (1993).
Aetna moves for summary judgment on the ground that there is no issue of material fact regarding its contention that it has no duty to indemnify Gentile. In support of this contention, Aetna offers several arguments. Aetna argues that the bodily injury done to Donna Prete was not caused by an "occurrence" as defined in the policy. The policy defines an occurrence as an accident,[6] but it does not define the word accident. Aetna urges the court to adopt the definition of accident set forth inProvidence Washington Ins. Group v. Albarello, 784 F. Sup. 950
(D.Conn. 1992), where the court defined the term accident as "a sudden event or change occurring without intent or volition through carelessness, unawareness, ignorance or a combination of causes and producing an unfortunate result. Webster's Third NewInternational Dictionary of the English Language." Id., 953. "To be entitled to coverage, it is not enough that the damages be unintended; rather the act that causes the damages must itself be unintended." Pacific Indemn. Co. v. Balf Co., CV:91 CV0091 (D.Conn. 1993) (Dorsey, J.). Aetna contends that the injuries that Gentile inflicted on Prete were the result of affirmative acts committed by Gentile and not the result of an accident that would CT Page 6942 trigger coverage under the policy. In opposition, the Pretes argue that the court should adopt the definition of Black's Law Dictionary for accident as "fall upon, befall, happen, chance, as in essence an accident is `a change, an incident, an occurrence.'" (Defendant's memorandum, p. 3)
The Connecticut Supreme Court has stated that "[a]n accident is an unintended occurrence." Hammer v. Lumberman's MutualCasualty Co., 214 Conn. 573, 590, 573 A.2d 699 (1990). In essence, Aetna asks the court to infer that Gentile's actions were intentional, not accidental, based on the admissions of Donna Prete and the statement she gave to the police. "[S]ummary judgment procedure is particularly inappropriate where the inferences which the parties seek to have drawn deal with questions of motive, intent and subjective feelings and reactions." Suarez v. Dickmont Plastics Corp. , 229 Conn. 99, 111,639 A.2d 507 (1994). While the admissions and the statement do establish that Donna Prete suffered injuries caused when Gentile stabbed and beat her, this evidence does not conclusively establish Gentile's subjective intentions at the time of the incident. Additionally, the Pretes have produced a certified deposition transcript of a psychiatrist, Dr. Snow, who states that it is his professional opinion that at least as a of a few weeks before the incident, Gentile was so addicted to cocaine that he was incapable of forming an intent to do the acts attributed to him. Even though he has acknowledged that he was unfamiliar with Gentile's condition on the day of the incident, Snow's statement, the Pretes claim, raises a genuine factual dispute over the key element of intent, thereby rendering in dispute the question of whether this incident was an "occurrence", within the meaning of the policy.
This court is constrained to agree. Although Dr. Snow's position may be difficult to sustain at trial, it does raise a factual dispute about Gentile's intent. As it is not this court's duty to resolve such factual disputes in connection with a motion for summary judgment, but merely to determine whether they exist, Aetna has failed to sustain its burden of establishing the nonexistence of a material fact concerning the intentions of Gentile at the time when Prete suffered her injuries.
Aetna next argues that even if the court finds that Donna Prete's injuries were caused by an occurrence under the policy, that Aetna still has no duty to indemnify Gentile because injuries that are expected or intended by any insured are CT Page 6943 excluded from the policy.[7] In support of this position, Aetna cites American National Fire Ins. Co. v. Schuss, 221 Conn. 768,607 A.2d 418 (1992) for the proposition that an actor's intentional conduct extends not only to the desired consequences of the actor but to those consequences which the actor believes are substantially certain to follow from his acts. Accordingly, Aetna contends that Gentile beat and stabbed Donna Prete intending to cause her some degree of harm and/or that Gentile believed harm was substantially certain to follow. Aetna relies on Prete's admissions and statement in support of this argument. In opposition, the defendants argue that what Gentile expected, intended, or believed the results of his actions would be is a question of fact.
"Intent is clearly a question of fact that is ordinarily inferred from one's conduct or acts under the circumstances of the particular case. . . . Thus, whether the actor knows that the consequences of his or her conduct are certain or substantially certain to result from his or her act and still proceeds with the conduct, so that he or she should be treated by the law as though he or she in fact desired to produce the result, is a question of fact for the jury." Suarez v. Dickmont Plastics Corps., supra,229 Conn. 111. Because the issue of what Gentile intended or should have anticipated as the consequences of his actions are within the province of the fact finder, Aetna has failed to show that there is no genuine issue as to any material fact regarding Gentile's subjective belief as to what consequences his actions would have for Donna Prete.
Aetna further argues in support of summary judgment that even if Gentile were entitled to coverage under the policy, his failure to forward court documents and pleadings allegedly served on him by the Pretes and his failure to notify Aetna of the incident breached his contract with Aetna and relieved Aetna of any duty to indemnify him.[8] Aetna relies on Kolibczynski v.Aetna Life Cas. Co., 176 Conn. 676, 679, 410 A.2d 485 (1979) for the proposition that the forwarding of all court documents and pleadings is a condition precedent to the insurance company's duty to defend. In support of this proposition, Aetna offers the affidavit of Peter S. Alosky, an Aetna claims representative, who attests that he has personally reviewed Aetna's business records in this case, that the business records made by Aetna indicate that prior to the commencement of the declaratory judgment action Gentile did not give Aetna notice of the incident that occurred on September 13, 1990, and that Aetna's business records indicate CT Page 6944 that Gentile did not forward any court documents or pleading allegedly served on him by the Pretes in Prete v. Gentile, supra. (Affidavit of Peter S. Alosky, ¶¶ 8-9.)
In opposition, the Pretes offer a letter, dated June 8, 1992, (the June 1992 letter) is from Claudia Mack, technical claim representative for Aetna, to John Keyes, the Pretes' attorney, informing him that Aetna's investigation revealed that Gentile was not a resident of his parents' household at the time of the incident, and that Aetna therefore has no liability; a letter, dated August 24, 1992, (the August 1992 letter) replying to the June 1992 letter from Keyes to Mack, in which he writes, "[i]nasmuch as you did not respond to my previous letter, we brought suit, enclosed is the writ." He then informs Mack that the Pretes believe that Gentile was a resident of his parents' household and that they will contest Aetna's finding to the contrary; and a letter, attached to Donna Prete's reply and dated January 18, 1993, (the January 1993 letter) from Mack to Keyes in which Mack states that she received a letter from Keyes on behalf of Gentile on November 11, 1992, and that this was the first direct communication that her office has had with Gentile or someone on his behalf.
The present case was commenced on January 23, 1993, by service of process on the Pretes and Gentile. The attack on Donna Prete occurred on September 13, 1990. Alosky attests that during this period, neither Gentile nor anyone acting on his behalf gave Aetna any notice of the incident or forwarded any court document or pleadings to Aetna. (Affidavit of Alosky.) The June 1992 letter, however, reveals that Aetna personnel knew that the Pretes were suing Gentile, and Gentile was claiming that Aetna was obligated to defend and indemnify him six months before the commencement of the present declaratory judgment action. Moreover, the June, 1992 letter indicates that Aetna was aware of the claim prior to June because it had investigated the claim and was prepared to deny coverage. In fact, the January, 1993 letter indicates that Aetna personnel knew of the suit as early as April of 1992. Accordingly, the affidavit, letters and date stamped complaint tend to contradict the affidavit of Alosky and therefore leave in dispute a genuine issue of fact regarding when and whether Aetna received notice.
In summary, Aetna's motion for summary judgment is denied because there are questions of material fact concerning the subjective intentions of Gentile and when and whether Aetna CT Page 6945 received notice of the Pretes' personal injury suit against him.
SILBERT, J.